UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON COLLIER,

                    Plaintiff,

v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case # 15-CV-230-FPG

DECISION AND ORDER

Jason Collier ("Collier" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his application for Social Security Income ("SSI") under Title XVI of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 7, 8. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On April 24, 2012, Collier applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 10, 114-19. He alleged that he had been disabled since September 17, 2010. Tr. 114. After his application was denied at the initial administrative level, a hearing was held before Administrative Law Judge Timothy J. Trost ("the ALJ") on July 9, 2013 in which the ALJ considered Collier's application *de novo*. Tr. 37-54. Collier appeared at the hearing with his attorney and testified. *Id.* On September 9, 2013, the ALJ issued a decision finding that Collier

---

[1]     References to "Tr." are to the administrative record in this matter.

1

was not disabled within the meaning of the Act.  Tr. 7-19.  That decision became the Commissioner's final decision when the Appeals Council denied Collier's request for review on January 27, 2015.  Tr. 1-5.  Collier commenced this action on March 17, 2015, seeking review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Collier's claim for benefits under the process described above.  At step one, the ALJ found that Collier had not engaged in substantial gainful activity since April 24, 2012, the application date.  Tr. 12.  At step two, the ALJ found that Collier has the following severe impairments: status post left femur fracture with surgical insertion of an intramedullary rod, osteoarthritis of the left knee, and left ear hearing loss.  Tr. 12-14.  At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings.  Tr. 14.

Next, the ALJ determined that Collier retained the RFC to perform light work[2] with constant use of either hand to perform gross and fine manipulation, but he is limited to work that does not require acute hearing capabilities or sustained gross motor function with the left leg.  Tr. 14-18.  At step four, the ALJ found that Collier could perform his past relevant work as a fast food cashier, retail stocker, commercial cleaner, and food preparer.  Tr. 18.  Thus, the ALJ's analysis concluded at step four and he determined that Collier was not "disabled" under the Act. Tr. 18-19.

### II.   Analysis

Collier argues that: (1) the RFC determination is not supported by substantial evidence; and (2) the ALJ erred at step two when he determined that his visual impairments were not severe.  ECF No. 7, at 8-12.  These arguments are addressed in turn below.

---

[2]        "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

### A.   RFC

Collier first argues that the RFC determination is not supported by substantial evidence because consultative examiner Nikita Dave, M.D. ("Dr. Dave") opined that he had moderate limitations, which he contends is inconsistent with the ALJ's finding that he can perform light work. ECF No. 7-1, at 8-9.  Dr. Dave opined that "due to a recent left femur fracture," Collier had "moderate limitations for prolonged standing, walking, lifting, carrying, pushing, [and] pulling of heavy objects, climbing ladders, or participating in activities requiring sustained weightbearing and gross motor manipulation through the left lower extremity." Tr. 250.  She also opined that due to "[l]eft ear loss of hearing, [Collier] should avoid activities where he would need to rely on his acute hearing capabilities for his or others safety." *Id.*  The ALJ summarized Dr. Dave's examination findings and medical source statement in his decision, and he accorded "great weight" to Dr. Dave's opinion due to her professional qualifications, her in-person clinical observations, and the support provide by her testing reports.  Tr. 15 (citing 20 C.F.R. § 416.927; S.S.R. 96-2p); Tr. 18.  As mentioned above, the ALJ determined that Collier retained the RFC to perform light work with some additional limitations related to his left leg and hearing impairments.  Tr. 14-18.

Collier asserts that the RFC is inconsistent with Dr. Dave's opinion, because an individual who is "moderately" limited in standing and walking is likely unable to perform light work.  ECF No. 7-1, at 8-9.  However, a claimant is not necessarily rendered disabled simply because he or she is moderately limited in sitting or standing.  *Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014).  In fact, "several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing." *Id.*

(citations omitted).   Under these circumstances, however, the ALJ is required "to discuss and provide reasons tending to support the finding that, despite the moderate limitations . . . [the claimant] could still perform light work." *Id.* (citation omitted).

Collier claims that the ALJ failed to explain why, despite the moderate limitations imposed by Dr. Dave, he retained the RFC to perform light work. ECF No. 7-1, at 8-9.  In the ALJ's decision, however, he summarized the medical evidence related to Collier's impairments and explained how that evidence demonstrated that he could work despite Dr. Dave's limitations. Tr. 17.  The ALJ pointed out, for instance, that Dr. Dave's June 2012 opinion limited Collier's use of his left leg because she examined him shortly after his left leg surgery.  Tr. 17 (citing Tr. 249).  Several months later in February 2013, however, a primary care treatment note indicated that Collier exercised five days per week and that there was no swelling in his left leg. Tr. 15, 17 (citing Tr. 256-58).  The ALJ reasoned that the medical evidence showed improvement of Collier's left leg impairments and "did not establish any limitations that would interfere with [his] ability to perform light or sedentary work."  Tr. 15, 17.  Additionally, the ALJ properly considered the fact that Collier did not seek follow-up treatment between December 2011 and February 2013 and concluded that this "indicated higher physical functioning than [Collier] alleged in his application." Tr. 17; *see Miller v. Colvin*, 85 F. Supp. 3d 742, 755 (W.D.N.Y. 2015) ("An ALJ is permitted to consider a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments.") (citations omitted); *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (finding that the plaintiff's failure to seek medical attention "seriously undermine[d]" his contention of disability).   Accordingly, because the ALJ provided an adequate explanation for why Collier

could perform light work despite moderate limitations, the ALJ did not err and the RFC is supported by substantial evidence.

Collier also argues that the RFC is not supported by substantial evidence because Dr. Dave's medical opinion, which imposed "moderate" limitations, was too vague for the ALJ to rely upon. ECF. No 7-1, at 9-10. Dr. Dave's opinion, however, was supported by an objective physical examination and her medical source statement was not "so vague as to render it useless" in evaluating Collier's ability to perform light work. *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347-48 (E.D.N.Y. 2010) (quoting *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)) (finding that the consultative examiners' opinions were too vague to support the RFC determination because they were extremely brief, used ambiguous terms, and lacked medical evidence to support their conclusions); *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (finding the consultative examiner's opinion "remarkably vague" where he merely opined that the plaintiff "should be able to lift . . . objects of a mild degree of weight on an intermittent basis"); *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 218-19 (W.D.N.Y. 2014) (finding that the consultative examiner's opinion did not deserve great weight because it described the plaintiff's limitations in "general and speculative terms" without additional information and it was inadequate in comparison to the "detailed and specific" limitations set forth by the plaintiff's treating chiropractor).

Dr. Dave's examination revealed, for example, that Collier had a normal gait and stance and he could squat half way down. Tr. 248. He used no assistive devices, did not need help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. *Id.* He also had full range of motion throughout his body, including his bilateral hips and knees. Tr. 249. Due to a recent left leg surgery, Collier declined

to do a heel-to-toe gait on the left side and his left knee was swollen. Tr. 248-49. As to Collier's hearing impairment, Dr. Dave indicated that Collier could hear conversational speech, but his left ear did not respond to a finger rub test. Tr. 248. Collier reported that he cooked twice a week, cared for his children, groomed himself independently, watched television, read, and listened to music. Tr. 247.

As a result of the detailed evidence contained in Dr. Dave's report, the ALJ could consider Dr. Dave's opinion to be substantial evidence. *See* 20 C.F.R § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Miller*, 85 F. Supp. 3d at 752 (finding that the consultative examiner's opinion that the plaintiff was "moderately limited" was not vague because it was supported by an objective physical examination and substantial evidence); *Smith v. Colvin,* 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014) ("[T]he opinions of consulting sources may constitute substantial evidence if they are consistent with the record as a whole.") (citations and internal quotation marks omitted). Moreover, Dr. Dave's opinion constitutes substantial evidence because he examined Collier in person. *See Smith*, 17 F. Supp. 3d at 268; 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Accordingly, based on all of the objective medical evidence set forth in Dr. Dave's report and her medical source statement that spoke directly to Collier's functional abilities and left leg and left ear limitations, this Court finds that the ALJ properly relied on Dr. Dave's opinion and that her opinion constituted substantial evidence in support of the RFC determination.

### B.     Step Two

Collier also argues that the ALJ erred at step two when he found that his visual impairments were not severe impairments.  ECF No. 7-1, at 10-12.  At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).  A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.921.  "Basic work activities" are "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out instructions, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b)(1)-(6); *see also Peralta v. Colvin*, No. 5:14-CV-0068 (LEK/TWD), 2015 WL 1505708, at *4 (N.D.N.Y. Mar. 31, 2015).   It is the claimant's burden to present evidence that establishes the severity of his or her impairment.  20 C.F.R. § 416.912(c).   The claimant must demonstrate "that the impairment has caused functional limitations that precluded him [or her] from engaging in any substantial gainful activity for one year or more."  *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010); *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).  A finding of not severe should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. *Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-28, 1985 WL 56858, at *3 (1985).

Here, the ALJ noted at step two that Collier's eyes were examined three times between April and June 2012 to monitor cataracts.  Tr. 13.  However, Collier's treating optometrist, James

M. McDonal, O.D. ("Dr. McDonal"), indicated that the cataracts did not limit him from performing desired activities. Tr. 13 (citing Tr. 262). Dr. McDonal also indicated that Collier had adequate acuity and no distorted vision. Tr. 13 (citing Tr. 266, 268). The ALJ also considered Dr. Dave's examination, which measured Collier's corrected vision at 20/40 in each eye and 20/50 bilaterally. Tr. 13 (citing Tr. 248). Dr. Dave's examination did not assess any visual restrictions. Tr. 246-50. The ALJ also considered Collier's testimony that he could not watch television for one hour at a time and that he has difficulty if he stares at letters too long. Tr. 13, 50. After discussing all of this evidence, the ALJ placed "greater weight" upon Dr. McDonal's opinion than upon Collier's testimony because Dr. McDonal is an acceptable treating medical source, a vision specialist, and one of Collier's treatment providers. Tr. 13 (citing 20 C.F.R. §§ 416.927, 416.913).

Based on the ALJ's discussion of Collier's visual impairments and the medical evidence of record, this Court finds that the ALJ's step two determination was supported by substantial evidence and that any conflicts in the in the visual evidence were within the ALJ's discretion to resolve. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 112 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.") (citation omitted). Most significantly, neither Dr. McDonal nor Dr. Dave opined that Collier's visual impairments caused any functional limitations. Collier failed to carry his burden at step two to provide evidence showing that his visual impairments were severe or caused functional limitations that precluded him from performing substantial gainful activity.

## CONCLUSION

For the reasons stated above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED.  Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 17, 2016
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

11